# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

A&A FARMS, LLC,

         *Plaintiff,*

  vs.

RURAL COMMUNITY
INSURANCE SERVICES,

         *Defendant.*

Case No. 15-1001-EFM-TJJ

## MEMORANDUM AND ORDER

Plaintiff A&A Farms has filed a Motion for Judicial Review (Doc. 1-1), seeking to overturn an arbitration award of $94,301 in favor of Defendant Rural Community Insurance Services (RCIS) for an overpayment of crop insurance indemnity. This matter comes before the Court on A&A Farms' Motion for Remand (Doc. 10) and RCIS' Motion to Dismiss (Doc. 4). First, the Court finds that A&A Farms and RCIS meet the requirements for federal diversity jurisdiction, and the Motion for Remand is denied. Secondly, RCIS seeks to dismiss the motion for judicial review for failure to state a claim (Doc. 4). A&A Farms alleges partiality on the part of the arbitrator. RCIS maintains that there has not been enough alleged in the motion to meet the "evident partiality" standard for overturning an arbitration decision. The Court agrees that A&A Farms failed to meet the pleading standard required to withstand a Federal Rules of Civil Procedure 12(b)(6) motion, and the Motion to Dismiss is granted.

## I.        Factual and Procedural Background

A&A Farms leased ground in Stevens County, Kansas, from Galen Brecheisen in order to cultivate the land beginning in 2012.  RCIS, a Minnesota company, insured the plaintiff's crops beginning in 2012.  The policy signed by A&A Farms required that if a dispute arose, arbitration would have to be carried out before any other legal actions could be taken.[1]  At that time, A&A Farms was approved as a new producer in Stevens County.  As a new producer, A&A Farms was entitled to a production guarantee of 100 percent of the estimated county yield.  Without the new producer designation, it would have only been entitled to 65 percent production guarantee.

During an audit conducted by the Office of Inspector General in 2012, the Risk Management Agency[2] was instructed to review all policies identifying the policyholder as a new producer.  The agency told RCIS to verify the policies that met its review requirements.  One of these was A&A Farms' policy.  RCIS complied and determined that A&A Farms did not qualify as a new producer.  A handwritten note with Brecheisen's name and information along with the initials "SBI" had been added to the insurance application.  RCIS testified that this meant that Brecheisen had a "Substantial Beneficial Interest" in the insurance policy.[3]

Brecheisen was to be paid a portion of A&A Farms' crops as his rent, and while this is allowed, the way the paperwork was filed listed Brecheisen as a having a crop share rather than

---

[1] *See* Exhibit A, Doc. 1-1, at 41-42 (Section 20(a) of the Common Crop Insurance Policy.  This Policy in relevant part provides, "If you and we fail to agree on any determination made by us except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association[.]").

[2] The Risk Management Agency is the entity that oversees the procedures applicable to the crop insurance program. The agency also supervises the Federal Crop Insurance Corporation and provides the personnel and support to carry out its policies and procedures.

[3] The Basic Provisions of the insurance policy define "substantial beneficial interest" to mean "an interest held by any person of at least 10 percent in the [policyholder]." Exhibit A, Doc. 1-1, at 15.

the intended cash lease.  The owner of A&A Farms drafted the paragraph and wrote out the provisions for the payment of the lease without consulting RCIS or an attorney about whether these provisions said what he intended them to say.  RCIS determined that A&A Farms' lease agreement created a substantial beneficial interest under FCIC regulations.  Due to this interest, RCIS policy required that Brecheisen's years of agriculture experience in the area be attributed to A&A Farms and negated its new producer status, even though A&A Farms was new to the area.

In 2014, RCIS sent a letter to A&A Farms notifying it of its change in status and of the overpaid indemnity from 2012.  RCIS also informed A&A Farms that $94,301 in overpaid indemnity was owed back.  In the letter informing A&A Farms of the new status, RCIS also reminded A&A Farms of the need to submit to arbitration to resolve a dispute.  Only after arbitration had been completed could A&A Farms request judicial review of the award in court.

In September 2014, an arbitrator decided in favor of RCIS and awarded it $94,301.  The arbitrator held that it was the responsibility of A&A Farms for "accuracy and verification of all information contained in the reporting forms" including the existence of a substantial beneficial interest.[4]  This meant it was the responsibility of A&A Farms to make sure that the lease was correct when it was signed.  The arbitrator concluded that A&A Farms did not qualify as a new producer for 2012.[5]  A&A Farms moved in state court for judicial review of the arbitration for relief from the decision (Doc. 1-1).  RCIS removed the suit to federal court and filed a Motion to Dismiss (Doc. 4), which is now before the Court.  A&A Farms then filed a Motion for Remand to state court (Doc. 10), which is also before the Court.

---

[4] Award of Arbitrator, Doc. 1-1, at 83.

[5] *Id.* at 84.

## II.      Legal Standard

There are two matters that must be dealt with: (1) A&A Farms' Motion for Remand and (2) RCIS' Motion to Dismiss for failure to state a claim.

### A.  Federal Jurisdiction and Remand

If an action originally filed in state court could have been heard in federal court, it can be removed to federal court.[6]  The federal court must have a statutory or constitutional authority to hear the case in order to satisfy its limited jurisdiction.[7]  A federal court must remand the action "if any time before final judgment it appears that the district court lacks subject matter jurisdiction."[8]  Subject matter jurisdiction is established through (1) diversity jurisdiction or (2) federal-question jurisdiction.[9]  Diversity jurisdiction requires that the amount in controversy exceed $75,000 and that each defendant is a resident of a different state than each plaintiff.[10]  If at any time, the court lacks subject matter jurisdiction, the court must remand the case in its entirety to the state court.

### B.  Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim where the plaintiff has failed to state a claim upon which relief can be granted.[11]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a

---

[6] 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[7] *See* U.S. Const. art. III; *Sheldon v. Sill*, 49 U.S. 441, 448-49 (1850).

[8] 28 U.S.C. § 1447(c).

[9] *See* U.S. Const. art. III.; 28 U.S.C. §§ 1331-1332.

[10] *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013).

[11] Fed. R. Civ. P. 12(b)(6).

claim to relief that is plausible on its face.' "[12]  A claim is facially plausible if the plaintiff pleads

facts sufficient for the court to reasonably infer that the defendant is liable for the alleged

misconduct.[13]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide

defendants with fair notice of the nature of claims as well as the grounds on which each claim

rests.[14]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the

complaint, but need not afford such a presumption to legal conclusions.[15]  Viewing the complaint

in this manner, the court must decide whether the plaintiff's allegations give rise to more than

speculative possibilities.[16]  If the allegations in the complaint are "so general that they

encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged

their claims across the line from conceivable to plausible.' "[17]

### III.    Analysis

### A.  Motion for Remand

Both parties acknowledge federal jurisdiction under 28 U.S.C. § 1332—diversity

jurisdiction.  A&A Farms is from Kansas, RCIS is from Minnesota, and the amount in question

is $94,301, satisfying the requisite amount.  However, A&A Farms asserts that though the

district court has jurisdiction, the court has discretion under the *Burford* abstention doctrine to

---

[12] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 566 U.S. at 556).

[14] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

[15] *Iqbal*, 556 U.S. at 678-79.

[16] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

[17] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 566 U.S. at 570).

remand the case to state court.   In opposition to the motion, RCIS argues that the narrow exceptions the *Burford* doctrine addresses do not exist in this case.

Even if federal jurisdiction exists, the courts may, in extreme cases, exercise a form of the abstention doctrine and refuse to exercise its jurisdiction.   The *Burford* abstention doctrine has been deemed appropriate by the Supreme Court only if the case (1) "presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at the bar," or (2) "if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[18]

This doctrine is derived from *Burford v. Sun Oil Co.*, a case remanded to state court as a result of the "general regulatory system devised for the conservation of oil and gas in Texas."[19] If the federal courts exercised jurisdiction, the decision would unnecessarily complicate the state's attempt to regulate its own industry.[20]   This doctrine is meant to be "an extraordinary and narrow exception to a district court's duty to adjudicate a controversy properly before it."[21]   The Supreme Court has "often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."[22]   This duty is not absolute, especially

---

[18] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 707 (1996) (quoting *Colo. River Water Conservation Dist. v. United States.*, 424 U.S. 800, 814 (1976)).

[19] *Burford v. Sun Oil Co.,* 319 U.S. 315, 318 (1943).

[20] *See id.* at 330-334. Texas feared confusion if state courts all could oversee the Railroad Commission and so concentrated direct review of the Commission's orders in state district courts of Travis County. Exercise of federal equity jurisdiction resulted in the complication the state was attempting to avoid. The Supreme Court held that in this case "a sound respect for the independence of state action requires the federal equity court to stay its hand." *Id.* at 334.

[21] *Quackenbush*, 517 U.S. at 707.

[22] *Id.* at 716; *see, e.g., Colo. River,* 424 U.S. at 821.

where "abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration."[23]

The federal government established the Federal Crop Insurance Act (FCIA) and the Federal Crop Insurance Corporation (FCIC) to normalize the administration and regulation of crop insurance across the country.[24]  A&A Farms alleges the abstention doctrine is available in this case in order to assist the state governments in "carrying out their domestic policy."[25] RCIS objects to this characterization, saying that the implementation of the FCIA and FCIC have preempted state action concerning crop insurance.

As Congress worked to make the FCIA viable, states began to interfere with the FCIC's regulation of the program.  As a response to this interference, the FCIC passed regulations that clarified its preemption of state law under 7 U.S.C. § 1506(l).  These regulations explained that states did not have the authority to "promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part[.]"[26]   No state, including Kansas, could establish its own regulatory scheme for crop insurance.  In fact, A&A Farms, in its Motion for Remand, did not attempt to claim that Kansas had an additional regulatory scheme that could satisfy the *Burford* requirements.  Therefore, there is no ongoing state effort that would be disrupted by this Court exercising its jurisdiction.

---

[23] *Quackenbush*, 517 U.S. at 717 (quoting *Colo. River*, 424 U.S. at 817) (internal quotation marks omitted).

[24] *See* Federal Crop Insurance Reform and Department of Agriculture Reauthorization Act of 1994, 7 U.S.C. §§1501-1521; Steffen N. Johnson, *A Regulatory 'Waste Land': Defining a Justified Federal Role in Crop Insurance*, 72 N.D. L. Rev. 505, 507-21 (1996) (describing the history of the FCIA and subsequent legislation).

[25] Motion for Remand, Doc. 10, at 5-6.

[26] 7 C.F.R. § 400.352(a).

The requirements for diversity jurisdiction are present.  Here, the *Burford* exception does not apply because the nature of this case does not fall within the narrow requirements for abstention.  For these reasons, the Plaintiff's Motion for Remand is denied.

## B.  Motion to Dismiss for Failure to State a Claim

A&A Farms argues for the arbitration to be set aside because (1) "this was not a valid or enforceable arbitration pursuant to K.S.A. 5-401(c)(1) as a contract for insurance," and (2) "there was evident partiality by an arbitrator appointed as a neutral."[27]  RCIS contends that the FCIA applies to questions pertaining to federal crop insurance and that the Federal Arbitration Act (FAA) applies to arbitration clauses in those policies.  RCIS also maintains that there was no evident partiality as understood under the FAA and the arbitration decision should stand.

### 1.  Valid and Enforceable Arbitration

A&A Farms argues that K.S.A. § 5-401(c)(1), which makes arbitration clauses in insurance contracts unenforceable, applies here despite policy language that provides that conflicting state laws do not apply to the policy.[28]  It argues that the McCarran-Ferguson Act allows the Kansas statute to reverse preempt the FAA.[29]  The McCarran-Ferguson Act prevents Congress from implementing laws that could "invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, unless such Act specifically

---

[27] Motion for Judicial Review, Doc. 1-1, at 3.

[28] Exhibit A, Doc. 1-1, at 46 (providing that "state and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy").

[29] K.S.A. § 5-401(c)(1). This section makes a provision in a written contract to submit to arbitration valid except for contracts of insurance, (unless it is between insurance companies), contracts between an employer and employees, or any provision providing for arbitration of a claim in tort.

relates to the business of insurance."[30]   A&A Farms maintains that the arbitration clause of its crop insurance policy is invalidated by K.S.A. § 5-401(c)(1) and therefore is unenforceable.

When Congress enacted the FCIA, it specifically authorized the FCIC to issue regulations that preempt state law.[31]   Further, the regulations issued by the FCIC provide for the preemption of contrary state and local laws that "directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation."[32]   In a similar case, another federal district court held that a state law precluding enforcement of arbitration awards did not preempt the federal crop insurance policy's arbitration award.[33]

The Tenth Circuit held that the FAA "provides that contractual agreements to arbitrate disputes shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[34]   Finally, the Tenth Circuit also has held that § 4 of the FAA "authorizes a federal district court to compel arbitration when it would have jurisdiction over a suit on the underlying dispute."[35]   For these reasons, the arbitration clause of the crop insurance policy between RCIS and A&A Farms is valid and enforceable.

---

[30] 15 U.S.C.A. § 1012(b).

[31] 7 U.S.C. § 1506(l) ("State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation, or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations.").

[32] 7 C.F.R. § 400.352(a).

[33] *In re 2000 Sugar Beet Crop Ins. Litig.*, 228 F. Supp. 2d 992, 996-97 (D. Minn. 2002) ("Because Congressional statutes specifically relating to the business of insurance supersede state laws, the FAA and other federal laws are applicable.")

[34] *Hill v. Ricoh Ams. Corp.,* 603 F.3d 766, 771 (10th Cir. 2010); 9 U.S.C. § 2.

[35] *Hill,* 603 F.3d at 771; *see generally Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-27 (1983) (discussing scope and operation of FAA).

### 2.  Grounds for Vacation of an Award: Evident Partiality

The courts have shown themselves reluctant to overturn arbitration awards.  The Supreme Court has held that the grounds stated in the FAA provide the exclusive grounds for expedited vacation and modification of an arbitration award.[36]  These grounds include the presence of corruption, fraud, or undue means in the procurement of the award, presence of evident partiality, misconduct in the management of the hearing, or when the arbitrators exceeded their powers.[37]

The Tenth Circuit has held that evident partiality standard requires "clear evidence of impropriety" where "the evidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative."[38]  Overt chicanery or misconduct is not required but more than mere allegations of partiality or misconduct are necessary for the Court to be willing to question the finding.[39]  Undisclosed relationships between the arbitrator and one party could demonstrate evident partiality.[40]  The courts should consider the totality of the circumstances including peculiar commercial practices in the area, if the arbitrator had a financial interest in arbitration, if there was a relationship between the

---

[36] *Hall St. Assocs., L.L.C., v. Mattel, Inc.,* 552 U.S. 576, 584 (2008) ("We now hold that §§10 and 11 respectively provide the FAA's exclusive grounds for expedited *vacatur* and modification.").

[37] 9 U.S.C. § 10. K.S.A. § 5-412 provides for the same four grounds for vacation of an award.

[38] *Ormsbee Development Co. v. Grace,* 668 F.2d 1140, 1147 (10th Cir. 1982).

[39] *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,* 492 F.3d 132, 137 (2d Cir. 2007); *see also Commonwealth Coatings Corp. v. Cont'l Cas. Co.,* 393 U.S. 145 (1968).

[40] *Morelite Const. Corp. v. New York City Dist. Council Carpenters Ben. Fund*, 748 F.2d 79, 80-81 (2d Cir. 1984) ("A father-son relationship between an arbitrator and an officer of one party to the arbitration rises to the level of 'evident partiality' required by Section 10 for vacating an award.").

-10-

arbitrator and alleged favored party, and whether this relationship continued through the arbitration.[41]

In the context of reviewing an appraisal, the Tenth Circuit found that a plaintiff had not alleged evident partiality when it merely restated "its factual allegations that [the defendant] applied the wrong definition of fair market value, violated professional appraisal standards, and failed to consider [the plaintiff's] evidence."[42]  These statements, without additional examples of partiality, did not rise to the level of evident partiality.  In a review of an arbitration award, the Tenth Circuit held that a claim that the arbitrators ruled against the clear weight of the evidence did not meet the definition of evident partiality.[43]

Here, A&A Farms claims that the arbitrator demonstrated partiality by "ignoring the evidence presented and [taking] the RCIS allegation to be true on its face, as if it was never contradicted."[44]  A&A Farms asserts that the arbitrator accused it, "as an advocate of RCIS rather than a neutral arbitrator," of signing the insurance application with wrong information.[45]  A&A Farms also objects to the way the arbitrator handled the evidence and to the fact the arbitrator did not require further evidence from RCIS about alleged discrepancies in the documents.  These mere allegations of ignoring evidence because of partiality, without further

---

[41] *U.S. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 814 F.Supp. 1165, 1175 (S.D.N.Y. 1993).

[42] *Salt Lake Tribune Publishing Co., LLC v. Management Planning, Inc.,* 454 F.3d 1128, 1140 (10th Cir. 2006).

[43] *Legacy Trading Co. v. Hoffman,* 363 F. App'x. 633, 635 (10th Cir. 2010).

[44] Motion for Judicial Review, Doc. 1-1, at 7.

[45] *Id.*

connection between the arbitrator and RCIS, are speculative and do not rise to the level of evident partiality, even if true.

Taking these factors into account and taking all alleged facts as true, A&A Farms does not allege the evident partiality needed to overturn an arbitration award under the FAA.  As there are no grounds to vacate the award under the provisions of the FAA, the Motion to Dismiss for failure to state a claim is granted and the arbitration decision stands.

**IT IS THEREFORE ORDERED** that A&A Farm's Motion for Remand (Doc. 10) is **DENIED.**

**IT IS FURTHER ORDERED** that Rural Community Insurance Corporation's Motion to Dismiss (Doc. 4) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 22nd day of July 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE